# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

CASE NO.   C-1-02-174

**STAR COMMUNICATIONS SERVICES, INC.**
**and DAVID L. KEEVER,**
                    **Plaintiffs,**

                    **Vs.**

**DUCT UTILITY CONSTRUCTION AND**
**TECHNOLOGIES, INC.;**
**Formerly known as PROCARE INDUSTRIES,**
**LTD;  FAST POINT ACQUISITION CORP.;**
**RANDALL A. DREW, Individually, and in his**
**Representative capacity,**
**and C. CHRISTOPHER KESSEN, Individually,**
**and in his Representative capacity,**
                    **Defendants.**

**AFFIDAVIT**
**OF**
**DAVID KEEVER**
(Individually)

Now Comes, David L. Keever, after being duly sworn, by way of affidavit, do hereby depose and say:

1.      That I am a citizen and resident of Caldwell County, North Carolina.

2.      That I am above the age of eighteen years and suffer from no legal disabilities.

3.      That I am familiar with all of the events, which are the subject of the merger between Duct Utilities, Star Communications and myself, and am further aware of all of the events and transactions that are the subjects of the pleadings contained in this law suit.

## *Events and Description of Losses*

4.      In  January 1997, I formed Star Communication, Inc., having the same incorporated under the laws of the State of North Carolina and doing business in North Carolina and other states.

5.      Star Communications was in the primary business of upgrading of cable television systems all across the eastern United States.

6.    By December 31, 2000, Star Communication Services, Inc. had in gross revenues in excess of ten million dollars annually and was a growing entity in the world of fiber optic able installation.

7.    That by December of 2000, Star Communications had numerous valuable and repetitive contracts with mega international cable installation companies.

8.    That in December 200, Star Communications employed American Management Equities to sell the corporation *en tota*, including, but not limited to, a complete stock transfer, transfer of bank accounts, , among other aspects.

    A.    That as required by the merger agreements, I transferred signatory authority of Star Communications bank accounts to the defendants,

    B.    That I transferred the stock and the other assets, as per the agreement.

9.    That I am personally aware that on June 1, 2001, the value of the HK Utility/Pro Care/ Duct stock was valued at four dollars per share. (See exhibit M)

10.   That between June 1, 2001 and August 1, 2001 the value of said stock fluctuated between four dollars per share and three dollars and fifty cent per share. (See exhibit M)

11.   That I know that between August 1, 2001 and September 3, the value of said stock fluctuated between three dollars and fifty cent per share and three dollars and seventy five cents per share, with the highest price being six dollars and twenty five cents per share. (See exhibit M)

12.   That I know between September 3, 2001 and October 3, 2001, the value of the stock fluctuated between three dollars and seventy five cents per share to sixty five cents per share, with the highest price being four dollars per share. (See exhibit M)

13.   That all of the defendants, individual and corporate, failed to fully perform and comply with the terms of the merger/stock agreement, in that they failed to pay the monies due to Keever, they failed to pay the promissory note due in December, failed to maintain all the monthly payments, that they failed to make all of the bank payments that were due, failed to catch up all the back due monthly expenses, failed to pay the payroll and failed to carry forward with Star Communications work.

14.   That further, Kesson, Drew and Pro Care/Duct Utilities failed to carry forward with the work that Star Communications had presently contracted work that Star

had presently been awarded, which totaled approximately in excess of twenty million dollars.

15.    As a result of the failure of Drew, Kesson and ProCare/Duct Utilities to carry forward with the work that Star had been committed to that Star Communication lost all of its fiber optic cable contracts.

16.    That further as a result of Drew, Kesson and ProCare/Duct Utilities to carry forward with the work that Star Communication had been awarded, that Star Communication was reduced to a status of no longer being able to be bonded and further was unable to secure any further work.

17.    Scott Shepherd  was one of the members of the executive management team. See Exhibit P.

18.    That during the period of time between September 1, 2001 and November 8, 2001,  Randall Drew disposed of eight hundred thousand shares for a total price of TWO MILLION THREE HUNDRED THIRTY SEVEN THOUSAND ONE HUNDRED AND EIGHT DOLLARS ($2,337,108.00).  (See attached exhibit N)

19.    That during the period of time between September 1, 2001 and December 20, 2001,  Christopher Kessen disposed of three hundred ninety thousand shares for a total price of   FIVE HUNDRED AND THIRTY NINE THOUSAND DOLLARS ($539,000.00).  (See exhibit O)

20.    Scott Shepherd also sold, between September 5 and December 20, one million five hundred seven thousand and twelve shares (1,507,012.00) for a total price of SIX HUNDRED SIXTY SEVEN THOUSAND FOUR HUNDRED TWO DOLLARS AND FORTY CENTS ($667,402.40).

21.    I know that Scott Shepherd was intricately involved in the most secret of conversations and strategy and planning of ProCare/Duct Utility with Randall Drew and Christopher Kesson.

22.    That I know personally Scott Shepherd was the owner / majority shareholder / president of a corporation called **Big Intelligence Group,** which was employed by ProCare/Duct Utilities/Randall Drew/Christopher Kesson for stock investment and stock consulting purposes.

23.    That I am aware that Scott Shepherd and Christopher Kessen reported on an SEC filing reporting the sale of stock after June 1, 2001, of having the same social security number , it being #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.

24.   That the use by Shepherd and Kessen of the same social security number was a criminal law violation and was a part of the criminal scheme to intentionally defraud me and others .

25.   I further know that said **Big Intelligence Group** shared *the very same office space* as Duct Utility, both having an address of 320 Whitstone Alley, Cincinnati, Ohio.

26.   On July 23, 2001 (after failing to abide by the terms of the stock agreement and further by failing to make any of the payments upon which Pro Care/Duct Utilities was obligated to pay),  Randall Drew, as president of the corporate entities, did advise David Keever that Pro Care/ Duct Utilities was rescinding the agreement and was not going to honor any of the obligations.  (See exhibit Q)

27.   That by July 11, 2001,  Pro Care/Duct Utilities/Randall Drew/Christopher Kesson, with the advise of and in support of Scott Shepherd had depleted virtually all of the financial assets of Star Communications, particularly the bank accounts .

28.   That in addition to rescinding the contract and failing to pay any of the obligations to which it had agreed upon, Randall Drew, CEO of Pro Care/Duct Utility, with the consent and assistance of Christopher Kesson did attempt to renegotiate the stock merger agreement, wherein Duct would take all of the selected assets free and clear of any obligations, would pay a reduced amount of money to me and would deliver to me a greatly reduced amount of common shares of stock, among other things.  (See exhibit R)

29.   That as a result of Drew/Kesson/Pro Care/Duct Utilities failing to comply with the terms and obligations of the stock transfer dated June 1, 2001 (Exhibit B),  I no longer had any income from which I could pay the monthly mortgage payments upon my house.

30.   That as a result of the conduct of  Drew/Kesson/Pro Care/Duct Utilities, Star Communications lost all of it's contracts, it's capability of securing performance bond  insurance and all of it's assets (particularly vehicles, employees, ditch witches, bank accounts, among other assets).

31.   That my wife Theresa Keever  and  I were the personal guarantors on virtually all of the Star indebtedness, which the defendants promised to pay in full and on time.

32.   That my residence was used a collateral on some of the loans for Star Communications.

33.    That I have been subjected to judgments entered in favor of First Citizens Bank against my wife, me and Star Communications in excess of TWO HUNDRED EIGHTY FIVE THOUSAND DOLLARS, in Caldwell County North Carolina.

34.    That I am unable to make my payments and I no longer have an insurable status or the ability to borrow monies from any financial/lending institution.

35.    That I am, as a result of the conduct of the above, unable to borrow money from which to purchase cable installation equipment, including vehicles, due to which is, and other expensive items as I possessed through Star Communications.

36.    Without the above ability to borrow money to purchase such equipment and further to become insurable, I have been unable to engage in the business to which I was experienced and qualified through Star Communications and thus my livelihood has been completely interfered with and stopped.

37.    That, as result of conduct of Defendants in failing to pay and honor the merger agreements, I have suffered numerous losses, including but not limited to:

    A.    My home valued at Two Hundred Twenty Eight Thousand Dollars ($228,000.00);

    B.    2000 Durango SUV valued at Twenty Thousand Dollars ($40,000.00);

    C.    2000 37 foot Discovery motor home, valued at One Hundred Thirty Seven Thousand Dollars ($137,000.00);

    D.    2001 model F-350 Ford truck, valued at Forty Two Thousand Dollars ($40,000.00); and

    E.    Numerous other losses.

37.    That in addition to my economic losses that I have stated above, I have experienced in excess of seven hundred sleepless nights, worrying about creditors, unpaid employees of mine, to where I would be able to transplant my family when I lose my house, the possibility of facing criminal charges (tax wise and other) resulting in imprisonment, and other such worries, *solely as a direct result* of the conduct of Pro Care/ Duct Utilities/ Randall Drew, and Christopher Kesson .

38.    In addition to the above economic losses which I have stated above, I have also lost my credit worthiness with all financial institutions and now no longer have the ability to borrow any monies whatsoever, and further have no abilities to

secure a revolving charge card, and I value this loss at FIVE HUNDRED THOUSAND DOLLARS ($500,00.00);

39.    In addition to the above stated losses, I have suffered the witnessing everyday of my wife and children suffering from the loss of income to which my family once enjoyed

40.    I further suffer watching my wife now having to leave our family home and wait on tables for two dollars per hour plus tips and further watch my wife leave our family home and clean up homes for people, said work earning her approximately one hundred and sixty dollars per week;

41.    That my wife performs these jobs in her attempts to aid and assist me in preserving what little that we may have left..

42.    I am force to watch my wife perform the above hard jobs all as a result of my engaging in a business proposition with the defendants.

43.    That a part of my shame, humiliation and distress is the watching my wife, at her age, work so hard (similar as we did when we were younger);

44.    That I value this great distress and humiliation and shame at ONE MILLION DOLLARS ($1,000,000.00).

45.    That I have been forced to invest in excess of TWO THOUSAND FIVE HUNDRED HOURS (2,500 hours) in dealing with the pursuit of the wrongs and all of the related legal problems I have suffered as result of the defendants' conduct.

46.    That my lost annual earning for loss of time invested in a total earning package in excess of TWO HUNDRED THOUSAND DOLLARS ($200,000.00).

47.    That , during the time I was in charge of Star Communications Services, Inc, I was earning at the base rate ONE HUNDRED TWENTY FIVE THOUSAND DOLLARS PER YEAR, in addition to the benefits of employee stock benefit plans and medical insurance and a company vehicle plus its repairs and insurance, which total in excess of SEVENTY FIVE THOUSAND DOLLARS ($75,000.00) , all of which culminate in a total earning package in excess of TWO HUNDRED THOUSAND DOLLARS ($275,000.00), representing income for rendering of 40 hours per week for 50 weeks per year man hours / work load.

48.    That in addition to the above losses that I have specifically stated, I additionally am now personally obligated to pay the current liabilities and the total current

*Page 6 of 10*

liabilities that were existing for Star Communications Services, Inc. as of March 31, 2001 in the amount of THREE MILLION FORTY NINE THOUSAND AND FORTY NINE DOLLARS AND NINETY THREE CENTS ($3,049,049.93), exclusive of interest over the last two years, (see exhibit E)

49.     Additionally, I am now being investigated by numerous taxing agencies, (including but not limited to IRS and the states of Virginia, Kentucky, and NC,) for the failing to pay corporate tax obligations (including but not limited to employee withholding), which should have been paid by the defendants,   said taxes ,including penalties totaling  in excess of FOUR  HUNDRED THOUSAND DOLLARS ($400,000.00) .

50.      I am now at risk of criminal charges arising out of  my position as an officer in the corporation wherein the taxes were not paid,   as to but not limited to the states of  Virginia, Kentucky, NC, and also  IRS, employment taxes;  all of which has caused me great humiliation and anxiety and emotional distress.

51.     That the conduct of the defendants in failing to pay the taxes and thereby subjecting me to possible criminal sanctions which includes imprisonment, is the sole and proximate cause of my emotional distress and anxiety and humiliation.

52.     That I have been subjected *on a daily basis* to the above alleged humiliation and anxiety and emotional distress (as described in the preceding two paragraphs) since July 2001.

53.     Based upon my earning rate of as established above in the amount of  a total earning package in excess of  TWO HUNDRED THOUSAND DOLLARS ( representing income for rendering of 40 hours per week for  50 weeks per year man hours / work  load), and upon applying the same to a  24 hours per day , the total based upon a 24 hour daily rate would be  amount of SIX HUNDRED THOUSAND DOLLARS PER YEAR;

54.     That based upon the calculation contained in the preceding paragraph, I value my two year earning loss to be (as of the date of signing this affidavit)   ONE MILLION TWO HUNDRED  THOUSAND DOLLARS ($1,200,000.00).

55.     That I have suffered damages for the emotional distress and anxiety and humiliation in the amount of ONE MILLION DOLLARS ($1,200,000.00).

56.     That the conduct of Drew, Kesson, Pro Care/Duct Utility,    *in failing* to fulfill its obligations of the stock transfer agreement creating all the losses I have suffered from that,    *in "dumping"* the  stock by Kessen, Drew and Shepherd during the peak periods of this fight,    *in creating* stock peak period "fueled" primarily by

the use of my (Star's)  financial information which the defendants obtained on June 1, 2001 (by virtue of the stock merger), *and by all other conduct alleged above* constitutes an Unfair and Deceptive Trade Practice and entitles me to treble, as by law allowed.

57.     In addition I have been forced to employ the services of C. Gary Triggs, P.A. , Brian Ewald  and other attorneys, in my pursuit of redressing all of these wrongs committed by the defendants against me, and have already said attorneys   in excess of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) attorneys' fees toward that pursuit and fully expect to pay more attorney fees in the  future.

### *Summary of Losses*

58.     That my out of pocket expenses and losses for attorney fees is in excess of TWENTY FIVE THOUSAND DOLLARS ($25,000.00) attorneys' fees.

59.     That my losses for transportation , mailing, and investigations are in excess of TWO THOUSAND DOLLARS ($2,000.00).

60.     That my lost anticipated earnings for the failure of the defendants to pay the contractually guaranteed consulting salary in the amount of ONE HUNDRED TWENTY FIVE THOUSAND DOLLARS ($125,000.00).

61.     That my lost earnings I would have as the owner and officer  with Star for a period of two years of 2002 and 2003 is   FIVE HUNDRED FIFTY THOUSAND DOLLARS ($550,000.00).

62.     That my lost anticipated profits from the sale of stock valued at $10.00 per share for 675,000 shares in the amount of   SIX MILLION SEVEN HUNDRED FIFTY THOUSAND DOLLARS ($6,750,000.00) , for the stock I received but now cannot covert to currency.

63.     That my lost earnings for the 2,500 hours the amount of TWO HUNDRED FIFTY THOUSAND  DOLLARS ($250,000.00).

64.     That I have suffered additional losses for the exposure to the  indebtedness  which defendants were contractually obligated to pay via the merger  in excess of THREE MILLION FORTY NINE THOUSAND FORTY NINE DOLLARS AND NINETY THREE CENTS  ($3,049,049.93).

65.     That I have suffered losses for the exposure to the taxes, both IRS and state tax, for all forms of tax liabilities , which  defendants were obligated to pay via the

merger,  in excess of FOUR HUNDRED THOUSAND DOLLARS
($400,000.00).

66.    That I have suffered damages for emotional distress and anxiety for my exposure
       to the possible criminal tax consequences and said two year loss is ONE
       MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000.00);

67.    That I have suffered additional losses in that First Citizens has a recorded
       judgment on the civil actions registry of Caldwell County North Carolina against
       me and my wife (to which my house is now partial security) in the amount of
       TWO HUNDRED EIGHTY FIVE THOUSAND DOLLARS ($285,000.00).

68.    That I have suffered additional losses in that I am subject to losing my home
       valued at Two Hundred Twenty Eight Thousand Dollars ($228,000.00);

69.    That I have suffered additional losses in that I lost 2000 Durango SUV valued at
       Twenty Thousand Dollars ($40,000.00);

70.    That I have suffered additional losses in that I lost  2000 37 foot Discovery motor
       home, valued at ONE HUNDRED THIRTY SEVEN THOUSAND DOLLARS
       ($137,000.00);

71.    That I have suffered additional losses in that I lost a work truck 2001 model F-350
       Ford truck, valued at FORTY TWO THOUSAND DOLLARS ($42,000.00);

72.    That I have suffered additional losses for the loss of my credit worthiness and
       inability to secure loans  in excess of FIVE HUNDRED THOUSAND
       DOLLARS ($500,000.00);

73.    That the value of my emotional distress and humiliation and shame from having
       to watch my wife perform menial work as we did when we were younger in the
       amount of ONE MILLION DOLLARS ($1,000,000.00).

74.    That the total amount of loss for the value of my time I have invested since
       August 2001 to redress these wrong is TWO HUNDRED THOUSAND
       DOLLARS ($200,000.00).

### *Total of All Losses*
### *Actual and Treble*

75.    That    ***THE TOTAL OF ALL OF MY ACTUAL LOSSES AS AVERRED***
       ***ABOVE***    is    FIFTEEN  MILLION TWO HUNDRED TWENTY EIGHT

THOUSAND DOLLARS NINE HUNDRED DOLLARS AND NINETY THREE CENTS ($15,228,900.93).

76.    That the **THE TOTAL AMOUNT OF  TREBLE DAMAGES** for the Unfair and Deceptive Trade Practices of the Defendants  to which I am entitled is   FORTY FIVE MILLION SIX HUNDRED EIGHTY SIX THOUSAND SEVEN HUNDRED TWO DOLLAR AND  SEVENTY NINE CENTS ($45,686,702.79).

The affiant further sayeth not.

This the 9th day of July,  2003.

DAVID LYNN KEEVER

Sworn to and subscribed
before me, this the  9th day
of July, 2003.

Notary Public
My commission expires: 1-27-05