

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

FILED
KENNETH J. MURPHY
CLERK

**03 OCT -3  PM 12 31**

| | | |
|---|---|---|
| **DUCT UTILITIES &** | : | **CASE NO. C-1-02-174** ... COURT |
| **TECHNOLOGIES, INC.** | | ... DIST OHIO |
| **F/K/A PRO CARE INDUSTRIES, LTD., et al.** | : | WEST DIV CINCINNATI |
| | | **JUDGE BECKWITH** |
| | : | **MAGISTRATE HOGAN** |
| **Plaintiffs,** | : | |
| **v.** | | |
| | : | |
| **STAR COMMUNICATION SERVICES** | | |
| | : | |
| **and** | | |
| | : | |
| **DAVID KEEVER** | : | |
| **DEFENDANT KEEVER'S** | | **DEFENDANT KEEVER'S** |
| | : | **MOTION FOR SANCTIONS** |
| **Defendants/Third Party** | | **(RULE 37)** |
| **Plaintiffs,** | : | |
| | | |
| **v.** | : | |
| | | |
| **RANDALL DREW, et al.** | : | |
| | | |
| **Third Party Defendants.** | : | |

---

Now Come the Defendants/Third Party Plaintiffs, Star Communications, Inc. (hereinafter "Star") and David Keever (hereinafter "Keever"), by and through their attorney of record, C. Gary Triggs and Brian Ewald, do hereby move the Court for an Orders of Sanctions and, in the alternative, a Show Cause Order, and in support of said motion, alleges and says as follows:

1. That the above-captioned matter is a civil action filed on behalf of Plaintiffs which involves the issues regarding a purchase and merger by Plaintiffs of Defendant Star Communications Inc.

2. That a counterclaim was filed in the above-captioned matter on the 14th day of May 2002, alleging breaches of contractual terms and agreements in said merger, including but not limited to, the failure to comply with the monetary portions and obligations by Plaintiffs.

3.    That after the filing of said Complaint, counsel for the Plaintiffs filed a Motion to Withdraw and requested the Court grant to Plaintiff an additional thirty days within which to seek new counsel to appear on their behalf.

4.    That prior to an Order allowing Plaintiff's counsel to withdraw, a Discovery Order was agreed upon by all parties and presented to the Court for the Court's approval, which included dates and deadlines for the completion of discovery.

5.    That subsequent to the entry of the Discovery Order, no counsel has appeared on behalf of the Plaintiffs.

6.    That, upon information and belief, Third Party Defendant Drew has left the State of Ohio and in fact moved his residence to the State of Utah.

7.    That, upon information and belief, the Plaintiffs and Third Party Defendants have depleted the stock and all assets of Duct Utilities and ProCare and HK Utility and Fast Point Acquisition.

8.    That, upon information and belief, the depletion of all the assets was intentional and in fact was a scheme designed for the sole purpose of defrauding and defeating the claims of all creditors, including but not limited to, Star Communications and Keever.

9.    That pursuant to the Discovery Order, Defendants issued notices to take depositions of Plaintiffs and Third Party Defendants, and mailed said notices to the last known addresses of each of the Plaintiffs, Drew and Kessen.

10.   That the addresses to which the deposition notices were mailed were the addresses provided by Third Party Defendants, Drew and Kessen to the Court.

11.   That said deposition notices were returned to the Defendants un-served and unclaimed.

12.   That the Defendants further have attempted to contact the Plaintiffs and Third Party Defendants by means of telephone, said telephone service being disconnected by the Plaintiffs and Third Party Defendants.

13.   That Defendants have further attempted to contact the Plaintiffs at the business address, which said address having been closed.

14.   That the Defendants have attempted to locate Plaintiffs, Duct Utilities and Fast Point, in the State of Ohio and are unable to locate Third Party Defendants Drew, Kessen, Fast Point Acquisitions, Duct Utility.

15.    That the Defendants have made a good faith effort in attempting to locate the new whereabouts of each of the Plaintiffs and Third Party Defendants, including the numerous attempts to find new telephone numbers, to find new business addresses, to find new corporate names, to track the disposition of assets of Plaintiffs, to trace through SEC filings, and the engaging of other persons to attempt to locate Plaintiffs and Third Party Defendants.

16.    The above actions by Defendants have established that Third Party Defendant Kessen is still located in the State of Ohio.

17.    The efforts of Defendants have established that Third Party Defendant Drew has moved his residence to the State of Nevada, but that mailing address to personal service has not been able to be determined;

18.    The efforts of Defendants have established that Plaintiffs Duct Utilities, ProCare, Fast One Acquisitions are no longer vital corporate entities and in fact are defunct due to depletion of assets of stock and monies by Third Party Defendants Drew and Kessen.

19.    That, upon information and belief, the corporate Plaintiffs have been dissolved.

20.    That, upon information and belief, Third Party Defendant Drew has moved his assets and his residence to the State of Utah.

21.    That, upon information and belief, Third Party Defendant Kessen, is still located in the State of Ohio.

22.    That since the entry of the Discovery Order, the Plaintiffs and Third Party Defendants have made no contact with Defendants and have ceased all communications with Defendants or Defendants' counsel and the Court.

23.    That the Plaintiffs and Third Party Defendants have failed to keep the Court advised of mailing addresses for service of pleadings and further have failed to advise Defendants' counsel and Defendants of proper mailing addresses for service of pleadings and documents.

24.    That the Plaintiffs and Third Party Defendants have failed to comply with the rules regarding discovery and depositions.

25.    That the Defendants have incurred great legal expense in attempting to pursue these matters and to engage in discovery, as required by the Scheduling Order entered by this Court.

26.    The actions of Plaintiffs and Third Party Defendants have interfered with Defendants' attempts to proceed with this civil action.

27.    That the failure of the Plaintiffs and Third Party Defendants to comply with the calendar order was an intentional act and constitutes contempt of the Orders of this Court.

28.    That in support of this motion, the undersigned defendant does herein incorporate his verified affidavit.

**WHEREFORE**, Defendants respectfully pray the Court as follows:

1.    That the Court enter an order directing each of the Plaintiffs and Third Party Defendants to appear before this Court and Show Cause why each should not be held in contempt for its conduct in failing to comply with the Scheduling Discovery Orders entered by this Court;

2.    To come before this Court and Show Cause why they should not be held in contempt for the failure of each to keep the Court and the Defendants apprized of the correct mailing address for purposes of service of pleadings and other discovery matters;

3.    That the Court order that the Plaintiffs and Third Party Defendants each pay to Defendants reasonable attorney fees for the prosecution of this motion;

4.    That each of the Plaintiffs and Third Party Defendants be ordered to pay all expenses incurred by the Defendant David Keever in connection with the pursuit of this motion;

5.    That the Court order that Defendants' Counterclaim be taken as established facts for the purposes of this action;

6.    That all of Plaintiffs' Complaint be stricken;

7.    That Third Party Defendants' Counterclaim be dismissed;

8.    That a Judgment by Default be entered against each of Plaintiffs and Third Party Defendants; and

9.    For such other and further relief the Court deems just and proper.

This the _____ day of August, 2003.

**C. GARY TRIGGS, P.A**.


By _L. Sgtng_____

**C. GARY TRIGGS**
North Carolina State Bar No. 5865
Post Office Drawer 579
206 West Union Street
Morganton, North Carolina  28680
Telephone  (828) 433-0872
Facsimile  (828) 437-6693
Counsel for Star Communication &
David L. Keever

**BRIAN EWALD**


By _____

**BRIAN EWALD**
Ohio Bar No.  0069554
2406 Auburn Avenue
Cincinnati, Ohio 45219
Telephone   (513) 421-5555
Facsimile   (513) 977-5595
Co-counsel  for Star Communication &
David L. Keever

## CERTIFICATE OF SERVICE

The undersigned hereby certify that a copy of the foregoing *Defendant Keever's Motion for Rule 37 Sanctions* was served upon original Plaintiffs and third party defendants by depositing a copy of the same in the United States Mail, first class postage prepaid, addressed as follows:

Randall Drew
1231 Ida Street
Suite 2
Cincinnati, Ohio 45202

Randall Drew
5425 Thomaston Ct
Las Vegas, N 89122

Randall Drew
5533 Central Ave.
Saint Petersburg, Fl
33710

Duct Utilities & Technologies, Inc.
c/o Mr. Randall Drew
1231 Ida Street
Suite 2
Cincinnati, Ohio 45202

Fast Point Acquisition Corp.
c/o Mr. Randall Drew
1231 Ida Street
Suite 2
Cincinnati, Ohio 45202

Chris Kessen
1231 Ida Street
Suite 2
Cincinnati, Ohio 45202

Gregory Berberich, Esq.
STATMAN HARRIS SIEGEL & EYRICH, LLC
2900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202

This the 25th day of August, 2003.

**C. GARY TRIGGS, P.A**

By _____
**C. GARY TRIGGS**
North Carolina State Bar No. 58655
Post Office Drawer 579
206 West Union Street
Morganton, North Carolina 28680
Telephone  (828) 433-0872
Counsel for Star Communication &
         David L. Keever

**BRIAN EWALD**

By _____
**BRIAN EWALD**
 Ohio Bar No.  0069554
 2406 Auburn Avenue
 Cincinnati, Ohio 45219
 Telephone  (513) 421-5555
 Co-counsel for Star Communication
         David L. Keever

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CASE NO.  C-1-02-174
JUDGE BECKWITH
MAGISTRATE HOGAN

**DUCT UTILITIES TECHNOLOGIES, INC.**
**F/K/A PRO CARE INDUSTRIES, LTD., et al.:**
            **Plaintiffs,**              :

**v.**
                                          :

**STAR COMMUNICATION SERVICES**
                                          :**DEFENDANT KEEVER'S MEMORANDUM**
            **and**                                     **IN SUPPORT OF**
                                          :      **MOTION TO DISMISS**
**DAVID KEEVER**                                **MOTIONS FOR SANCTION**
                                          :  **MOTION FOR SUMMARY JUDGMENT**

            **Defendants/Third Party**
            **Plaintiffs,**              :

**v.**                                    :

**RANDALL DREW, et al.**                  :

            **Third Party Defendants.**   :

_____

Now Come the Defendants/Third Party Plaintiffs, Star Communications, Inc. (hereinafter "Star") and David Keever (hereinafter "Keever"), by and through their attorney of record, C. Gary Triggs and Brian Ewald, do file this Memorandum of Law supporting Defendants' Motions for Sanctions, to Dismiss, and Summary Judgment.

## STATEMENT OF FACTS

That this memorandum of law is premised, upon not only the pleadings of the parties, but also upon the accurate statement of facts as found in Affidavit of David L. Keever (Defendant and Third Party Plaintiff) as attached to Defendant's Motion for Summary Judgment.

1

That the issues of the above-captioned matters center around the merger and acquisition of Star Communications by the Plaintiff (Duct Utility) in June of 2001.  Pursuant to this merger, Plaintiffs were to perform various promises, including but not limited to, the payment of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) to David Keever.  In exchange , the Plaintiffs were to "take over" Star Communications, thereby using its financial standing along with its assets , so as to be able to then claim in SEC filings that Duct has assets and contracts valued in excess of Ten Millions Dollars.  The result of the SEC filings was two fold: (1) allowed Duct to attract the new "mergers" with more companies such as Star;   and (2) inflate the value of Duct's stock (which the third party defendants began selling in large quantities).   But when the time arrived in July and then in August for Duct to perform some of its promises,  Duct "rescinded" the merger.  During this time, it is to be noted that Duct had no workforce and had not engaged in any performance of cable installation work.  It, in essence, was only a paper corporation.

After Duct's failures and refusals to comply with the appropriate merger terms, the Defendant filed civil actions in the State of North Carolina for breach of contract, among other things, which were removed to the Federal Courts in North Carolina.  Simultaneously, Duct filed civil actions in the state of Ohio.  The defendant then agreed that all issues contained in the civil actions would be litigated in the state courts of Ohio.   Then after great delay and blustering, Plaintiffs (Duct and the third party defendants) agreed that the matters would be litigated in the federal courts of Ohio.  Thus the civil action in the state courts was dismissed.  However, it took several months and numerous requests by Star and Keever to get Plaintiffs and third party defendants to finally institute this action, as agreed upon.

2

That since the date of the filing of this action (March 12, 2003), answer and counterclaim with a third party complaint was filed, to which the third party defendants did file answer and counterclaim.  However, just after this filing by the third party defendants, the Plaintiffs and third party defendants filed a Motion for Withdrawal of Counsel and time within which to seek further counsel to appear on their behalf, said request being granted on the 26th day of August, 2002.  However, this order did contain orders directing the Plaintiffs to secure counsel within 30 days and to then return to court for the discovery conference and such litigations purposes.

Since the entry of that order, no counsel has appeared of record.  Further since the entry of the Order the Plaintiffs/Third Party Defendants have made no further appearance in this matter, and further have failed to keep the Court advised of the mailing addresses for each of the Plaintiffs, have failed to ask for further time to seek counsel or to reappear.  However, what the Plaintiffs and Third Party Defendants have done in this interim is to continue to "dump" Duct stock and to further move the corporate offices and their personal offices.  It is believed that at least on of the third party defendants has moved out of state, and left no forwarding address.  That is what HAS transpired in this time period.

Thus, Defendants' attempts to serve legal documents upon Plaintiffs and third party defendants have been returned 'unserved as no longer at the addresses" with no forwarding address available.  That notice of a change of address or the obtaining a new address by the Plaintiffs and Third Party Defendants was not given to the Court or to counsel for Defendants.

3

That Plaintiffs and Third Party Defendants Drew and Kessen have wasted all the assets of Star Communication (by causing the termination of all job contracts) and by the "dumping" of the stock of Duct Utilities.    Upon information and belief, during the month of September, just within 30 days prior to the expiration of the Order allowing time for new counsel to appear, the individual Third Party Defendants Drew and Kessen did in fact dump hundreds of thousands of shares of stock of Duct Utilities.

It is asserted and believed that the withdrawal of counsel for the Plaintiffs and third party defendants in August, 2002 *and* the failure to secure additional counsel or to keep the Court informed as to the mailing addresses, was a scheme instituted by the Plaintiffs and Third Party Defendants for the sole purpose of giving the third party defendants sufficient time to basically complete the "dumping" of the Duct stock (before the stock value plummeted) thereby depriving the Court of jurisdiction of the assets of Duct Utility and the third party Defendants.

That, upon a review of the conduct of the Plaintiffs and the Third Party Defendants, the signing and the filing of the original complaint in this matter was done for an improper purpose as to cause unnecessary delay and/or needless increasing the cost of litigation to the Defendant and further to "buy time" to deplete the assets of Duct Utilities prior to any possible judgment being awarded to the Defendants.

That, upon information and belief, the filing of the complaint by plaintiffs and counterclaims by the third party defendants  further was known by those parties to be frivolous and that the truth facts would not support a judgment being rendered thereon.

4

That, upon information and belief, the filing of the complaint in the above-captioned matter was known by the Third Party Defendants Drew and Kessen and Duct Utility as to not likely to have evidentiary support and *in fact* were based upon falsehoods, designed for the sole purpose of "buying time" of the person secreting assets from any possible judgment that the Defendants may obtain, all of which constitutes an "improper purpose" in it s filing and certainly an abuse of process.

## STATEMENT OF THE LAW

**A.      *As to Defendant's Motion to Dismiss Plaintiffs' Original Complaint and the Third Party Defendants' Counterclaims and responses.***

As Rule 41(b) clearly states, "For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a [defendant] may move for dismissal of an action or claims against him".   This same rule applies to a Third Party defendant's counterclaim

The standard to apply here is that if a Plaintiff has failed to prosecute his case,    "when a motion to dismiss pursuant to statute is made, the judge becomes both judge and jury and he must consider and weigh all evidence before him."  The standard is not "taking the evidence in a light most favorable to the plaintiff".

In this case, Plaintiff filed an action and shortly thereafter asked that counsel of record be allowed to withdraw.  Upon order of the court, counsel was allowed to withdraw and Plaintiffs were given thirty (30) days to secure new counsel.  Since the time of being allowing counsel to withdraw, Plaintiff has not reappeared at any proceeding and failed to advise the

5

court of new counsel or as to change of address.  There has been no additional request by

Plaintiff for additional time to comply with orders of the court.   Plaintiff has failed to attend

mandatory discovery hearings.  That Plaintiffs and third party defendants have failed to appear

for depositions to be taken by defendants.  This is such a situation where a Rule 41(b) dismissal

is.   And when a rule 41(b)  dismissal for lack of prosecution is granted, it operates as an

adjudication on the merits *unless the court in its order of dismissal otherwise specifies.*

"Where plaintiff filed complaint against insurance company, ……. and where counsel for plaintiff

requested and was granted permission by District Court to withdraw as attorney for plaintiff,

plaintiff thereafter failing to obey order of court to get new counsel within 30 days or have

action dismissed, court held failure to prosecute and consequent dismissal constituted

*adjudication upon merits* and plaintiff could not file second action involving same loss and same

insurance policy." <u>Wasoff v American Auto. Ins. Co. (CA5 Tex) 451 F2d 767.</u> (Emphasis

added.)


It is clear Plaintiffs and Third Party Defendants have failed to prosecute its actions as

required by Rule 41, and for that reason, the plaintiffs' complaint and the third party

defendants' counterclaims should be dismissed with prejudice.


## B.     *As to Defendants' Motion for Summary Judgment*


The standard test for a motion for summary judgment is for the court to determine if

There is a genuine issue of a material fact and if not the moving party is entitled to judgment as

a matter of law.

This defendant's motion in this case brings before the court a two part consideration: (1) to determine if Plaintiffs' complaint and Third Party Defendants' counterclaim have a genuine issue of fact as required; and (2) to determine if Defendant's Counterclaim and Third Party Complaint should prevail.  In this consideration, the court will additionally take notice that there has been no objection presented to either part of the motion.

Under Federal Rule of Civil Procedure 56(c), the District Court shall grant a motion for **summary judgment** if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Generally, the court is not allowed to decide issues of credibility in ruling on a motion for **summary judgment.** Therefore, a special problem is presented when a party opposing **summary judgment** submits an affidavit that contradicts the affiant's prior deposition testimony on a material issue.  Anderson v Liberty Lobby, Inc. (1986) 477 US 242, 91 L Ed 2d 202, 106 S Ct 2505, 2509-10, 12 Media L R 2297, 4 FR Serv 3d 1041, motion den 480 US 903, 94 L Ed 2d 515, 107 S Ct 1343, which states that "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for **summary judgment;** the requirement is that there be no genuine issue of material fact."  .  In this case, there has been no supporting affidavits filed by the opposing parties and the affidavit of Keever does not conflict with his answer, counterclaim or third party complaint.  Thus, in reviewing any of *the unsupported* allegations in the complaint or third party counterclaim, no credence should be given such unverified allegations.

In order for the court to consider the granting of a summary judgment motion for the

[Defendant], there must exist a situation where there is no genuine dispute as any material fact. Bvolkman v. DP Associates, 48 NC App 155, 268 S.E. 2d 265 (1980), recognizing that it should be approached with caution, considering it is such drastic remedy. Billing v. Joseph Harris Co., 27 NC App 689, 220 S.E2d 361 (1975), affirmed 290 NC 502, 226 S.E. 2d 321 (1976). And summary judgment should only be awarded *where the truth is so clear* so as to make sure that no party is deprived of a trial on a genuinely disputed factual issue. And in this case, the defendant must bear the burden of showing that there is no genuine issue of material fact, thereby entitling him to judgment as a matter of law. Leake v. Sunbelt Ltd. of Raleigh, 93 N.C. App. 199, 201, 377 S.E.2d 285, 287, disc. Rev. denied, 324 N.C. 578, 381 S.E.2d 774 (1989). It is asserted this has been done in this case. A review of Keever's affidavit clearly and unequivocally establishes the breach of contract, the fraud, the wasting of the Star assets, the SEC violations, the humiliation and embarrassment and mental distress Keever has suffered, the contempt of this court, and the amount of damages sustained.

The movant for summary judgment may meet its burden by showing one of the following things: (1) that an essential element of the nonmovant's case is nonexistent; or (2) that, based on discovery, the nonmoving cannot produce evidence to support an essential element of its claim; or (3) that the movant can not surmount an affirmative defense which would bar the claim. Moore v. CITY of Creedmoor, 120 N.C. App. 27, 36, 460 S.E.2d 899, 904 (1995), citing Watts v. Cumberland County Hosp. System, 75 N.C. App. 1, 6, 330 S.E.2d 242, 247 (1985), rev'd in part on other grounds, 317 N.C. 321, 345 S. E. 2d 201 (1986). In applying this test, since no affidavits have been filed by Plaintiffs or third party defendants, the court is allowed to look at the pleadings to find any support for such a standard. The complaint and counterclaims were unverified. Once taking into consideration that even counsel for the

opposing party has withdrawn and the delay tactics which have been utilized by the opposing

parties, there simply is not genuine issue to be found   -   just falsehoods and improper

conduct.

The primary purpose of Summary Judgment is to eliminate the necessity of trials where

there are no genuine issues as to material facts and, therefore, matters can be determined as a

matter of law.  A court ruling upon a motion for summary judgment must view all the evidence

in the light most favorable to the non movant (in this case the plaintiff), accepting all his

asserted facts as true and drawing all reasonable inferences in her favor. Durham v. vine, 40

N.C. App. 564, 566, 253 S. E. 2d 316, 318-319 (1979), overruled on other grounds, Roumillat v.

Simplistic Enterprises, Inc., 331 N.C. 57, 63, 414 S.E. 2d 339, 342 (1992).  Additionally, a non

moving party cannot simply rely on the pleadings when the movant has taken the affirmative

steps and providing supporting affidavits.  Opposing party in this case has done nothing to

oppose this motion.


In the instant case, Plaintiff filed an action alleging breach of merger agreements,

among other things.  By way of counterclaim and cross claim, defendant asserted a breach of

merger conditions, negligence, and fraud, Unfair and Deceptive Trade Practices, among other

such claims against the Plaintiff and against the three (3) individuals (third party defendants)

who own and operate the corporate Plaintiff.


In certain cases, circumstantial evidence may be so obvious on its face to establish

fraudulent intent that there is no reasonable explanation, and thus summary judgment is

appropriate.  Desmond v. Varrrasso (In re Varrasso) (1994, CA1Mass) 37 F3d 760, CCH Bankr L

Rptr P  76145. In this case, it is asserted that Mr. Keever's uncontradicted affidavit clearly

9

establishes the intent to defraud by the Plaintiff and the third party defendants.  There are many situations where opposing parties have committed fraud.  Where fraud has occurred in order to artificially inflate stock prices, summary judgment can be appropriate.  "In action by stock purchasers against stock brokerage firm for violations of securities laws, defendant was entitled to partial **summary judgment** as to allegations that defendant misrepresented that there existed only limited number of shares for purchase, that defendant omitted to state that it was operating as principal instead of agent in dealing with stock, and that defendant engaged in improperly making market and establishing artificial prices, where there was no factual support in record for such allegations." Batchelor v. Legg & Co., 52 F.R.D. 553, Fed. Sec. L. Rep. (CCH) P 93120 (D. Md. 1971).


Having filed his affidavit to support his Rule 56 motion,   defendant Keever established that the conduct of Plaintiff (and Third Party Defendants) was a classic example of a fraud of inflating stock values which was committed upon three (3) separate victims: (1) was David Keever and Star Communications; (2) was the SEC and its policing techniques; and (3) the purchasers of any of the stock sold by the Plaintiff and the Third Party Defendants.  It also revealed a secondary conduct of simply depleting the assets of Defendant.  It also had the effect of bringing all contracts to an end for lack of performance. The conduct of Duct and the three individuals from the beginning was designed solely to file a SEC report which would "artificially inflate" Duct's stock value,   realizing   all the while that the actual acquisition terms with Star would not be honored.  By the time the timelines approached for Plaintiffs to begin complying with its agreements,   Plaintiff and third party defendants had, through the use of the "puffed up" financial reports,   had already "rolled up" additional companies via "merger" and thus began the process of rescinding the agreements with Star Communication.    The

short of it is that Duct went from being a shell company to one "boasting assets and job contracts in excess of $100,000,000.00 in less than four (4) months!  But no work was done and most all of the "mergers" (including the one which is before this court) were rescinded by the Plaintiffs and third party defendants.  However, Duct's stock values went from $0.00 per share to a maximum of $6.00+ per share during this same period of time wherein the third party defendants "dumped" stock by the truckloads, taking in millions of dollars.  And all of this occurred initially by entering into a "merger" with Star communications (who commanded cable installation contracts in excess of $10,000,000.00).   A classic fraudulent conduct which Title 17 attempts to prevent and prohibit.  See attached Addendum.


To all the averments (in Keever's affidavit) of fraud and breach of the terms of the merger, there has been no response or opposing affidavits filed.  There simply is no genuine issue of fact as to any of the allegations contained in David Keever's affidavit:  not as to the timeline of events or to the damages Mr. Keever has suffered.  No opposition to any of it. Even if an opposing party resisting **summary judgment** on ground asserts it needs some "discovery" to oppose the motion, this party must at least submit an affidavit showing: (1) what facts are sought and how they are to be obtained; (2) how those facts are reasonably expected to create genuine issue of material fact; (3) efforts made to obtain those facts; and (4) why party was unsuccessful in those efforts. 28 U.S.C.A. Rule 56(f) Fed. Rules Civ. Proc. Rumpler v. Phillips & Cohen Associates, Ltd., 219 F. Supp. 2d 251 (E.D. N.Y. 2002).  It is respectfully asserted that the nonmovant of a summary judgment motion cannot sit back.  There must be some sort of documentation or explanation of where issues are to lie, in order to survive such a motion.  However, nothing at all has been done.

11

In the instant case, Defendant should prevail on both prongs of his motion:  a judgment denying all of Plaintiffs' complaint and Third Party Defendants' counterclaim and (2) a judgment in Keever's favor as to all claims contained in his counterclaim and his Third Party Complaint.

## C.    *As to Defendant's Rule 11 and Rule 37 Motion for Sanctions*

In the instant case, sanctions are appropriate against Plaintiffs, Third Party Defendants and possibly against previous counsel.  The abuses described below involve not only Rule 11 violations but also Rule 37 ones also.

As to Rule 11 sanction,    usually the court looks to see if the motion regards one of fact or law or improper purpose.   And even if a complaint is well-grounded in fact and in law, it may nonetheless violate "improper purpose".   Thus, even if *on the surface* the allegations of the complaint might appear to be legitimate, it can still be, *if apparent,* that the filing of the action was for no other reason other than delay the defendants from preventing the wasting of all the assets and to allow additional time for the Plaintiffs and Third Party Defendants to "leave the country" or to "become non-findable".  In either event, a filing of any action or claim for such a purpose is done for an "improper purposes".

In this case, evidence and record proof of the failure to keep defendants' counsel and the Court advised of current mailing address is an example of a "delay tactic" employed by Plaintiffs and Third Party Defendants.  This, clearly, is improper conduct.    Having filed the action and counterclaimed against a third party complaint, counsel for Plaintiffs and Third Party Defendants suddenly, with great surprise, moved to be allowed to withdraw as counsel.  And

although allowed to do so, the parties were still directed to have new counsel appear within 30 days. Since the granting of the order, there has been absolutely no activity from Plaintiffs and Third Party Defendants. It is argued this is clear evidence of intent to avoid the jurisdiction of this court and all possible civil results. And recalling this case involves $15,000,000.00 dollars worth of alleged damages to Defendant and the possibility of treble damages on top of that, it becomes even clearer the reason for the failure to provide addresses and locations to where court documents can be served. This failure is not an accident. It was willful and intentional.

AS to Rule 37 sanctions.

In determining sanctions, courts will consider "willfulness" on part of person or party failing to act in accordance with discovery procedures. Diaz v Southern Drilling Corp. (1970, CA5 Tex) 427 F2d 1118, 71-1 USTC P 9236, 13 FR Serv 2d 1018, 26 AFTR 2d 70-5397, cert den 400 US 878, 27 L Ed 2d 115, 91 S Ct 118, reh den 400 US 1025, 27 L Ed 2d 638, 91 S Ct 580

Failure to obey discovery order is ground for sanctions under Rule 37(b) (2). United States v Nassau County (1979, ED NY) 28 Fed Rules Serv 2d 165.     Court may proceed on its own motion to dismiss plaintiffs from action for noncompliance with order to respond to defendant's discovery where defendants had not filed motion for sanctions under Rule 37. Booker v Anderson (1979, ND Miss) 83 FRD 284. Sanctions of Rule 37(d) may be imposed even in absence of order compelling discovery. Coon v Froehlich (1983, SD Ohio) 573 F Supp 918, 38 FR Serv 2d 773.

FRCP 37(b) necessarily applies only after litigation has formally commenced and some

13

form of court order has not been obeyed. McGuire v Acufex Microsurgical (1997, DC Mass) 175

FRD 149.   In this case, this court ordered Plaintiffs and Third Party Defendants to have new

counsel appear before the court within 30 days so that the discovery conference and other

procedural matters could be completed.  This absolutely was not complied with.  No extension

of time was requested.  No notification to the court from any of the Plaintiffs or Third Party

Defendants.  NO contact at all.   And although sanctions under FRCP 37(b) may only be

imposed where party displays willfulness, bad faith, or fault, this "fault" does not mean

noncomplying party's subjective motivation, but rather, only describes reasonableness of

conduct, or lack thereof, which eventually culminated in violation. Second Chance Body Armor v

American Body Armor (1998, ND Ill) 177 FRD 633.  It is asserted that the conduct in this case

was total unreasonable except that it clearly shows the intent not to comply with the orders of

this court and further to impede and interfere with the discovery processes.


The *form of the sanction* is in discretion of the Court.  It is suggested that some forms

of sanctions can be either:  monetary, striking of pleadings, dismissal of actions, among other

such sanctions.  It is further asserted that the Court has the power to impose more than one

form of sanctions.     Sanctions enumerated by Rule 37 are not exclusive or arbitrary but are

flexible and, within reason, may be applied in as many or varied forms as court desires by

exercise of broad discretion taking into consideration facts of each case; Rule 37 only requires

sanctions to "hold the scales of justice even". Guidry v Continental Oil Co. (1981, CA5 La) 640

F2d 523, 31 FR Serv 2d 443, cert den 454 US 818, 70 L Ed 2d 87, 102 S Ct 96 and (disapproved

on other grounds by Scindia Steam Navigation Co. v De Los Santos, 451 US 156, 68 L Ed 2d 1,

101 S Ct 1614) as stated in Helaire v Mobil Oil Co. (CA5 La) 709 F2d 1031, 1984 AMC 820.

Trial court has latitude to go beyond specified items of Rule 37 and fashion other sanctions which would be appropriate. <u>Socialist Workers Party v Atty. Gen. of United States (1978, SD NY) 458 F Supp 895, 25 FR Serv 2d 877,</u> later op (SD NY) <u>458 F Supp 923, 25 FR Serv 2d 1490,</u> later proceeding (SD NY) <u>463 F Supp 515</u> and vacated on other grounds (CA2 NY) <u>596 F2d 58, 27 FR Serv 2d 207,</u> cert den <u>444 US 903, 62 L Ed 2d 141, 100 S Ct 217, 28 FR Serv 2d 98,</u> later proceeding (SD NY) <u>642 F Supp 1357,</u> later op (SD NY) <u>666 F Supp 621.</u> Although court must consider availability of lesser sanctions prior to dismissal, explicit discussion of those alternatives is not required. <u>Gemisys Corp. v Phoenix Am., Inc. (1999, ND Cal) 186 FRD 551, 50 USPQ2d 1876.</u>

Although showing of willful disobedience or gross negligence is required to impose harsher sanction of order of dismissal or entry of default judgment, finding of willfulness or contumacious conduct is not necessary to support sanctions which are less severe. <u>Martinelli v Bridgeport Roman Catholic Diocesan Corp. (1998, DC Conn) 179 FRD 77, 10 F Supp 2d 138.</u> "Sanctions of dismissal of plaintiff contractor's claims against subcontractor's surety and default judgment against plaintiff on claim and counterclaim were not abuse of discretion where there were repeated failures to comply with discovery orders concerning production of documents and depositions for no apparent reason and less harsh sanctions had not worked." <u>Curtis T. Bedwell & Sons, Inc. v International Fidelity Ins. Co. (1988, CA3 Pa) 843 F2d 683.</u>

Total noncompliance with discovery rules justifies default judgment. Re Arthur Treacher's Franchisee <u>Litigation (1981, ED Pa) 92 FRD 429, 33 FR Serv 2d 227.</u> This is certainly what has occurred in this case, with the failure to re-appear and comply with the orders of the Court.

15

The sanction of *judgment by default* for failure to comply with discovery orders is a most severe sanction which this court may apply, although it should be tempered by careful exercise of judicial discretion to assure that its imposition is merited. "…. however, where one party has acted in willful and deliberate disregard of reasonable and necessary court orders and efficient administration of justice, application of even so stringent sanction is fully justified." Trans World Airlines, Inc. v Hughes (1964, CA2 NY) 332 F2d 602, 8 FR Serv 2d 37d.32, Case 1, cert dismd 380 US 248, 13 L Ed 2d 817, 85 S Ct 934, 1965 CCH Trade Cases P 71391 and cert dismd 380 US 249, 13 L Ed 2d 818, 85 S Ct 934, 1965 CCH Trade Cases P 71392.

The sanction of the a district court's decision to strike pleadings and enter default judgment against party is certainly a proper sanction, so long as it is not done with an abuse of discretion. And sometimes  the application of such a remedy can be "…tardily applied, where a party engages in repeated, *obstructive discovery tactics*     so as to preserve those business records, and as receiver became increasingly involved became convinced that there had been willful document destruction and alteration after beginning of suit and that party had engaged in further obstructive tactics during receiver's 10 year period." Frame v S-H, Inc. (1992, CA5 Tex) 967 F2d 194.  In short, this is a sanction that could and should be imposed at any time the court determines there are serious acts by an opposing party to waste assets or otherwise.  In this case, third party defendants disposed of millions of dollars of stock while failing to allow Keever to sell his and further by failing to comply with the merger documents.  And it is alleged that further sale of stock immediately after the institution of this action is exactly what the Frame court was addressing.

16

And the application of several drastic sanctions is not out of the ordinary.  In the Altschuler case,  the "Defendant's third party complaint is dismissed with prejudice, default judgment was entered against the defendant under Rule 37(b)(2), and attorneys' fees are awarded to government because of defendant's consistent failure to cooperate in litigation in good faith and obey discovery order of which it had proper notice." Altschuler v Samsonite Corp. (1986, ED NY) 109 FRD 353.

Consideration of due process requires that the most severe sanction of dismissal be imposed against ... [an opposing party] ...only if the failure to comply is due to willfulness, bad faith, or fault, and not to inability to comply. Re Atty. Gen. of United States (1979, CA2 NY) 596 F2d 58, 27 FR Serv 2d 207, cert den 444 US 903, 62 L Ed 2d 141, 100 S Ct 217, 28 FR Serv 2d 98, later proceeding (SD NY) 642 F Supp 1357, later op (SD NY) 666 F Supp 621. (Emphasis added).  **It has not been claimed** that the Plaintiffs and third party Defendants failed to secure counsel or to reappear before the court as ordered was based upon an "inability to comply".  However, **it is claimed and established** that the basis was the willfulness, bad faith, fault of the opposing parties.  Thus, the use of these severe forms of sanctions will not violate any due process rights of any of the opposing parties.

Sanctions available to the trial court are discretionary and will not be reversed, *unless there has been abuse of discretion*. However, there are cases which indicate that "...where drastic sanctions of dismissal or default are imposed, range of discretion is narrower and losing party's noncompliance must be due to willfulness or bad faith". Savola v Webster (1981, CA8 Minn) 644 F2d 743, 31 FR Serv 2d 410.   In this case, willfulness and bad faith exist and have been established.

17

Where a party fails to appear as directed by an order of a court, a dismissal of the action is appropriate. "District Court did not err in forfeiting defendant $ 239,500.00 to Government upon dismissal of claimants' claims from forfeiture proceeding, where District Court had ordered each claimant to appear for deposition with admonition that claims would be stricken if claimants failed to appear, but *claimants nevertheless failed to appear, ...*" United States v $ 239,500 in U.S. Currency (1985, CA11 Fla) 764 F2d 771, 2 FR Serv 3d 1309.

And a dismissal of a case for willful violation of procedural rules and orders of court was proper, despite the existence of less drastic sanctions. Morgan v Massachusetts General Hosp. (1990, CA1 Mass) 901 F2d 186, 134 BNA LRRM 2172, 53 CCH EPD P 39860.

And where it is become apparent that the Plaintiffs and the Third Party Defendants have "left the country" (or at least the state of Ohio), even if it is for "business" related reasons, the sanctions of dismissing the claims is appropriate. See Re Standard Metals Corp. (1987, CA10 Colo) 817 F2d 625, 15 BCD 1321, 16 CBC2d 952, CCH Bankr L Rptr P 71760, 7 FR Serv 3d 956.

A Court acts within its discretion where it dismisses action against [ a party] with prejudice and orders plaintiffs to pay [opposing party] expenses, including attorneys fees, because of a failure to timely file answers to [a party's] interrogatories (or request for admissions)in obedience to court's order entered after repeated directions to answer interrogatories which had been outstanding for many months, and because of false statements and false testimony given by [party's] attorney and officer of [party] to deceive counsel for [opposing party] and court regarding timeliness of service of the [party's] answers.

18

Independent Investor Protective League v Touche Ross & Co. (1978, CA2 NY) 607 F2d 530, 25 FR Serv 2d 222, cert den 439 US 895, 58 L Ed 2d 241, 99 S Ct 254, reh den 439 US 998, 58 L Ed 2d 673, 99 S Ct 604. Such deceit exists in this case.

No violation of either the due process or equal protection clauses of Constitution occurs when a [party] has suppressed or failed to produce relevant evidence in his possession which he has been ordered to produce, thereby giving rise to presumption as to bad faith and untruth of his answer, justifying striking it from record and rendering judgment as though by default. Hammond Packing Co. v Arkansas (1909) 212 US 322, 53 L Ed 530, 29 S Ct 370. It is asserted that his address and appearance before the court are a logical extension of this rule.

District Court does not err in dismissing complaint at plaintiff's cost for that party's failure to answer interrogatories. Milewski v Schneider Transp. Co. (1956, CA6 Ohio) 238 F2d 397 (diverged from on other grounds by Patton v Aerojet Ordnance Co. (CA6 Tenn) 765 F2d 604, 2 FR Serv 3d 900). It is argued that failing to respond to "Defendant's Notice to Take Depositions" is the same as a failure to respond to interrogatories. Both are discovery tools and both are designed to find the truth and thus streamline issues before trial.

As to who can be sanctioned for violations, it can be either the counsel or the party or both. And regardless of who may have "verified" the pleading, either counsel or the party can be sanctioned, particularly under a Rule 11 "improper purpose" analysis. And this applies particularly where the party provides information to the attorney, knowing the information to be false misleading and done for the improper purpose as discussed above. Bryson v. Sullivan, 1991, 401 S.E.2d 645, 102 N.C. App. 266, review allowed 407 S.E. 2d 831, 329 N.C. 266.

19

The attorneys of record at the time of the filing of the pleadings had the duty to make sufficient inquiry to determine the reasonableness and accuracy of the information provided by the parties. By comparing the "complaint and third party answer with counterclaim" to the "affidavit of David Keever and his answer / counterclaim, third party complaint", it appears to be of such a difference of truthfulness in the allegation of the facts that any counsel should have been aware of the great disparity for the truth and thus this should have warranted a more thorough determination of accuracy by counsel. Counsel are not allowed to simply take assertions of clients and then file pleading based solely upon this to file pleadings. This is the purpose of Rule 11. It is asserted that the "sufficient inquiry" was not made in this case.

In the instant case, with the degree and nature of the infractions which stem out of a fraudulent scheme to improperly "increase value of stock" (a violation of SEC rules) and the failure to reappear as ordered and the surprise move by counsel to withdraw, it is asserted that dismissal of the pleadings (original complaint, third party answer and counterclaim) along with monetary sanctions are appropriate. The costs imposed upon defendants from this conduct have been astronomical and nearly devastating financially. As to whether the court determines if the monetary sanctions be applied to previous counsel and parties   or just to the parties is solely in the court's discretion.

## CONCLUSION

Defendants respectfully pray the Court as follows:

1.      To dismiss the complaint and third party defendants' counterclaim;

2.      To strike the answer of the third party defendant;

20

3.    To impose sanctions against Plaintiffs, Third Party Defendants, and their respective

counsel; and

4.    To grant Defendants' Motion for Summary Judgment as to all issues;

5.    To enter judgment in favor of David Keever for:

a.  Consequential damages of **FIFTEEN MILLION TWO HUNDRED TWENTY**

**EIGHT THOUSAND NINE HUMDRED DOLLARS AND TWENTY EIGHT**

**SCENTS  ($15,228,900.28)**;

b.  Treble damages of **FORTY FIVE MILLION SIX HUDRED EIGHTY SIX**

**THOUSAND SEVEN HUNDRED TWO DOLLARS AND SEVENTY NINE**

**CENTS ($45,686,702.79;**

c.  Tax all costs to Plaintiffs and Third Party Defendants;

d.  Award attorney fees to Defendants' counsel; and

6.    For such other relief this Honorable Court deems just and proper.

Respectfully submitted, this the 25ᵗʰ day of August, 2003.

**C. GARY TRIGGS, P.A.**                                  **BRIAN EWALD**

By _____              By _____
   **C. GARY TRIGGS**                                          **BRIAN EWALD**
North Carolina State Bar No. 58655              Ohio Bar No.  0069554
Post Office Drawer 579                                  2406 Auburn Avenue
206 West Union Street                                  Cincinnati, Ohio 45219
Morganton, North Carolina 28680              Telephone    (513) 421-5555
Telephone   (828) 433-0872                        Facsimile    (513) 977-5595
Facsimile   (828) 437-6693                         Co-counsel for Star Communication
Counsel for Star Communication &            David L. Keever
David L. Keever

## CERTIFICATE OF SERVICE

The undersigned hereby certify that a copy of the foregoing *Defendant Keever's Memorandum of Law* was served upon original Plaintiffs and third party defendants  by depositing a copy of the same in the United States Mail, first class postage prepaid, addressed as follows:

Randall Drew            Randall Drew            Randall Drew
1231 Ida Street         5425 Thomaston Ct       5533 Central Ave.
Suite 2                 Las Vegas, N  89122     Saint Petersburg, Fl
Cincinnati, Ohio 45202                                          33710

Duct Utilities & Technologies, Inc.
c/o Mr. Randall Drew
1231 Ida Street
Suite 2
Cincinnati, Ohio 45202

Fast Point Acquisition Corp.
c/o Mr. Randall Drew
1231 Ida Street
Suite 2
Cincinnati, Ohio 45202

Chris Kessen
1231 Ida Street
Suite 2
Cincinnati, Ohio 45202

Gregory Berberich, Esq.
STATMAN HARRIS SIEGEL & EYRICH, LLC
2900 Chemed Center
255 East Fifth Street
Cincinnati, Ohio 45202

This the 25th day of August, 2003.


**C. GARY TRIGGS, P.A**                      **BRIAN EWALD**

By _____              By _____
**C. GARY TRIGGS**                           **BRIAN EWALD**
North Carolina State Bar No. 58655            Ohio Bar No.  0069554
Post Office Drawer 579                       2406 Auburn Avenue
206 West Union Street                        Cincinnati, Ohio 45219
Morganton, North Carolina 28680             Telephone    (513) 421-5555
Telephone   (828) 433-0872                  Facsimile    (513) 977-5595
Facsimile  (828) 437-6693                   Co-counsel for Star Communication
Counsel for Star Communication &            David L. Keever
        David L. Keever

# ADDENDUM

TITLE 17 -- COMMODITY AND SECURITIES EXCHANGES
CHAPTER II -- SECURITIES AND EXCHANGE COMMISSION
PART 240 -- GENERAL RULES AND REGULATIONS, SECURITIES EXCHANGE ACT OF 1934
SUBPART A -- RULES AND REGULATIONS UNDER THE SECURITIES EXCHANGE ACT OF 1934

MANIPULATIVE AND DECEPTIVE DEVICES AND CONTRIVANCES

17 CFR 240.10b-5

§ 240.10b-5 Employment of manipulative and deceptive devices.


   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

   in connection with the purchase or sale of any security.

**HISTORY:**
[13 FR 8183, Dec. 22, 1948, as amended at 16 FR 7928, Aug. 11, 1951]

**AUTHORITY:**
(Sec. 10; 48 Stat. 891; 15 U.S.C. 78j)

**NOTES:**
[PUBLISHER'S NOTE: UNITED STATES SUPREME COURT CASES SIGNIFICANTLY DISCUSSING SECTION -- SEC v National Secur., Inc. (1969) 393 US 453, 21 L Ed 2d 668, 89 S Ct 564; Superintendent of Ins. v Bankers Life & Casualty Co. (1971) 404 US 6, 30 L Ed 2d 128, 92 S Ct 165; Affiliated Ute Citizens v United States (1972) 406 US 128, 31 L Ed 2d 741, 92 S Ct 1456; Scherk v Alberto-Culver Co. (1974) 417 US 506, 41 L Ed 2d 270, 94 S Ct 2449; Blue Chip Stamps v Manor Drug Stores (1975) 421 US 723, 44 L Ed 2d 539, 95 S Ct 1917; Ernst & Ernst v Hochfelder (1976) 425 US 185, 47 L Ed 2d 668, 96 S Ct 1375; Santa Fe Industries, Inc. v Green (1977) 430 US 462, 51 L Ed 2d 480, 97 S Ct 1292; Will v Calvert Fire Ins. Co. (1978) 437 US 655, 57 L Ed 2d 504, 98 S Ct 2552; Chiarella v United States (1980) 445 US 222, 63 L Ed 2d 348, 100 S Ct 1108; Aaron v SEC (1980) 446 US 680, 64 L Ed 2d 611, 100 S Ct 1945; Herman & MacLean v Huddleston (1983) 459 US 375, 74 L Ed 2d 548, 103 S Ct 683; Dirks v SEC (1983) 463 US 646, 77 L Ed 2d 911, 103 S Ct

23

3255; Bateman Eichler, Hill Richards, Inc. v Berner (1985) 472 US 299, 86 L Ed 2d 215, 105 S Ct 2622; Basic Inc. v Levinson (1988) 485 US 224, 99 L Ed 2d 194, 108 S Ct 978; Lampf, Pleva, Lipkind, Prupis & Petigrow v Gilbertson (1991) 501 US 350, 115 L Ed 2d 321, 111 S Ct 2773; Musick, Peeler & Garrett v Employers Ins. (1993) 508 US 286, 124 L Ed 2d 194, 113 S Ct 2085; Central Bank, N.A. v First Interstate Bank, N.A. (1994) 511 US 164, 128 L Ed 2d 119, 114 S Ct 1439; United States v O'Hagan (1997) 521 US 642, 138 L Ed 2d 724, 117 S Ct 2199; Wharf (Holdings) Ltd. v United Int'l Holdings, Inc. (2001, US) 149 L Ed 2d 845, 121 S Ct 1776; SEC v Zandford (2002, US) 153 L Ed 2d 1, 122 S Ct 1899]
[PUBLISHER'S NOTE: FEDERAL CASES CITING THIS SECTION -- Employer-Teamsters Joint Council No. 84 Pension Trust Fund v. Am. West Holdings Corp., 2001 U.S. Dist. LEXIS 15235; Gonzalez v. Jose Santiago, Inc., 141 F. Supp. 2d 202; In re Gaming Lottery Sec. Litig., 2001 U.S. Dist. LEXIS 2034; Silva Run Worldwide Ltd. v. Bear Stearns & Co., 2000 U.S. Dist. LEXIS 16036; In re SmarTalk Teleservices, Inc. Sec. Litig., 124 F. Supp. 2d 527; In re SmarTalk Teleservices, Inc. Sec. Litig., 124 F. Supp. 2d 505; Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co., 2000 U.S. Dist. LEXIS 16445; Reiger v. Price Waterhouse Coopers LLP, 117 F. Supp. 2d 1003; Manufacturers Life Ins. Co. v. Donaldson, Lufkin & Jenrette Sec. Corp., 2000 U.S. Dist. LEXIS 7444; Gill v. Three Dimension Sys., 87 F. Supp. 2d 1278]